# IN THE COURT OF APPEALS OF IOWA

No. 23-1381
Filed November 8, 2023

**IN THE INTEREST OF A.M.-A. and B.A.,**
**Minor Children,**

**F.M., Mother,**
        Appellant,

**C.A., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

        A mother and father separately contest the termination of their parental rights to two children.  **AFFIRMED ON BOTH APPEALS.**

        Robert W. Davison, Cedar Rapids, for appellant mother.

        Deborah M. Skelton, Tiffin, for appellant father.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

        Robin L. O'Brien-Licht, Cedar Rapids, attorney and guardian ad litem for minor children.

        Considered by Tabor, P.J., and Badding and Buller, JJ.

**TABOR, Presiding Judge.**

Fawn and Carl have three children under the age of three. The parents separately challenge the termination of their parental rights to the two older daughters: A.M.-A., born in December 2020, and B.A., born in February 2022.[1] The parents contend that the girls can be safely returned to their care, termination was not in the children's best interests, and the juvenile court should have preserved their rights because of their close bond with their daughters. After our independent review, we decline the parents' requests for relief.[2] As the record shows, social workers still have valid concerns about the parents' housing instability, methamphetamine use, and mental-health challenges.

## I. Facts and Prior Proceedings

The Iowa Department of Health and Human Services took an interest in this family when B.A. was just nine days old. She was not gaining weight, and the department investigated whether the parents were providing adequate nutrition. She spent three days in the hospital, surpassing the medical staff's expectations for weight gain. B.A.'s recovery led doctors to believe that her failure to thrive did not result from an underlying medical condition, but insufficient nourishment. The department was also concerned that the older sister, A.M.-A., was undernourished. When the parents did not bring B.A. to the doctor for a recheck in March 2022, the juvenile court approved the department's request to remove the newborn and her

---

[1] The girls' baby sister, C.A., born in March 2023, has been removed from the parents' care but is not the subject of this appeal.

[2] We review termination decisions de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We respect the juvenile court's factual findings, but they do not dictate our result. *Id.* The State must prove the grounds for termination by clear and convincing evidence. *Id.*

older sister from their parents' custody. Since their removal, the children have been living with their aunt and uncle.

The juvenile court adjudicated B.A. and A.M.-A as children in need of assistance (CINA) in June 2022. Under the case plan, the parents needed to be evaluated for any substance-use and mental-health issues and follow through with recommended treatment. The department also expected them to complete parenting classes, attend visits with their children, and find suitable housing. But during that summer, in the words of the juvenile court, the parents' "engagement in services seemed to ebb and flow." They procrastinated in securing evaluations and were inconsistent in attending visits. By fall, they were more regular in their visitation and took classes to improve their parenting skills. But on the negative side, the social workers noted that Carl was sometimes verbally abusive to Fawn during their interactions. And throughout the CINA case, the parents missed many drug-testing appointments.

Beyond those challenges, the parents lacked stable housing. When the girls were removed from their care, the parents were staying at the Budget Inn, sharing a motel room with relatives. A few months later, they moved into a mobile home with Fawn's sister, boyfriend, and four children. Fawn and Carl tried to secure their own mobile home at the same park, but the move never materialized. In early 2023, the parents moved into a two-bedroom apartment occupied by Carl's mother, her boyfriend, his sister, and his sister's boyfriend. There was not room there for A.M.-A., B.A., and the new baby, C.A. The parents looked for independent housing but told the department they could not afford the security deposit and rent. The juvenile court noted that both parents were employed,

working at fast food restaurants, but resisted services to help with money management.

The State petitioned for termination of parental rights in January 2023, citing paragraph (h) of Iowa Code section 232.116(1) (2023).  By the termination trial in May, proper feeding of the children was no longer the main focus of the case.  But new concerns emerged.  Chief among them, both parents tested positive for methamphetamine six times between January and May 2023, while the termination petition was pending.  They maintained that the sweat-patch testing was inaccurate.  The department case worker also expressed concerns about the mental health of the parents.  Fawn was diagnosed with anxiety and borderline intellectual functioning; Carl was diagnosed with disruptive impulse control, conduct disorder, and borderline intellectual functioning.  Both parents attended the termination hearing, but neither testified.  The juvenile court terminated their rights in August 2023.  Both parents appeal.

## II.  Analysis

Both parents raise similar claims in their petitions on appeal so we will address them together.  In evaluating their claims, we follow a familiar three-step process.  First, we decide whether the State proved any grounds for termination under Iowa Code section 232.116(1).  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  If so, we must evaluate whether termination is in the children's best interests under section 232.116(2).  *Id.*  Third, we consider whether any circumstances listed in section 232.116(3) preclude termination.  *Id.* at 220.

## A. Ground for Termination

The juvenile court terminated the rights of both parents under Iowa Code section 232.116(1)(h).  To satisfy that ground, the State needed to prove by clear and convincing evidence:

> (1) [A.M.-A. and B.A. were] three years of age or younger.
> (2) [They] ha[d] been adjudicated as [CINA] pursuant to section 232.96.
> (3) [They] ha[d] been removed from the physical custody of [their] parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that [they] cannot be returned to the custody of [their] parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h); *see In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting "at the present time" to mean "at the time of the termination hearing").

The parents challenge only the fourth element.  Carl notes that "the issue that brought the family to the attention of the department was the baby's failure to thrive.  The parents addressed the issue by successfully completing SafeCare,[3] consistently exercising visits with the children, and attending the children's medical appointments."  Fawn adds that there have been minimal safety concerns when the children have been in her care.

---

[3] SafeCare is an evidence-based program to improve the skills of parents with children under the age of five.  It focuses on enhancing positive parent-child interactions, promoting a safer home environment and appropriate supervision, and encourages good health-care decision-making.  The program features eighteen sessions lasting about an hour each.  We review only the record on appeal to decide the parents' claims.  *See* Iowa R. App. P. 6.801.  But we note that more information about this program, consistent with our record, is available on line. *See SafeCare Overview*, https://hhs.iowa.gov/sites/default/files/2_SafeCare Overview 3-16-16 v4.1.1.pdf.

The case manager confirmed that the parents finished SafeCare training,except the home-safety sessions, which could not be completed because they lacked independent housing.  While the parents' efforts to improve their child-care competency are encouraging, they do not overcome the nagging apprehensions about their methamphetamine use, mental health, and unstable housing.

The juvenile court, which had followed this case from the beginning and heard the live testimony, concluded that the parents were not a safe option for A.M.-A. and B.A.  As the court found: "They have no stable housing, are testing positive for methamphetamine and continue to deny any use, have no stable housing and have failed to follow through with substance abuse or mental health treatment."  We believe that finding is supported by clear and convincing evidence. *See In re A.B.*, 815 N.W.2d 764, 775 (Iowa 2012).

## B.  Best Interests/Close Bond

Having determined that the State proved a statutory ground for termination, we turn to the question of what is in the children's best interests.  *See id.* at 776. In doing so, we consider their safety; the best placement for furthering their long-term nurturing and growth; and their physical, mental, and emotional condition and needs.  Iowa Code § 232.116(2).  We also weigh the girls' integration into the family of their aunt and uncle, who are now licensed foster parents.  *Id.* § 232.116(2)(b).

Applying that framework, we conclude termination is in the best interests of A.M.-A. and B.A.  Their parents have not secured safe housing for their family. And they have not credibly addressed their many sweat patches testing positive

for methamphetamine in the months before the termination hearing. Meanwhile, the children are safe and comfortable in the home of their aunt and uncle, who are also caring for their baby sister. The family support worker noted a strong bond among the three sisters.

Both parents argue that termination would harm their daughters because of their strong parent-child bonds. This distinct argument arises under Iowa Code section 232.116(3)(c), where it is the parents' burden to prove by clear and convincing evidence that "termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). And if they meet that burden, we still must decide whether the exception should preclude termination. *In re C.A.*, No. 13-1987, 2014 WL 1234470, at *3 (Iowa Ct. App. Mar. 26, 2014).

Assuming without deciding this issue is properly before us, the record does not support the parents' argument. At the termination trial, a service provider questioned Carl's "ability to bond and take care of the kids." True, Fawn supervised the children more during visits. But the case manager testified that she did not believe that termination of either parent's relationship would "detrimentally affect the girls." Like the juvenile court, we credit her opinion. The parents failed to establish this exception should have preserved their parental rights. *In re W.T.*, 967 N.W.2d 315, 324 (Iowa 2021).

**AFFIRMED ON BOTH APPEALS.**